FILED
U.S. DISTRICT COURT

2005 JUL -7  A 10: 13

DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

---

| | | |
|---|---|---|
| GREGORY A. MOLL, | : | Civil No. 2:04-CV-868 DAK |
| Plaintiff, | : | |
| vs. | : | REPORT AND RECOMMENDATION |
| THE BANK OF NEW YORK, AS TRUSTEE, UNDER THE POOLING AND SERVICING AGREEMENT TRUST SERIES (CWMBS99-06), | : | JUDGE DALE A. KIMBALL<br><br>MAGISTRATE JUDGE BROOKE C. WELLS |
| Defendant. | | |

---

Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court referred consideration of all pre-trial matters in the above-referenced case to Magistrate Judge Brooke C. Wells. Before the court are Defendant's Motion to Dismiss and Motion to Strike. Also before the court are Plaintiff's Motion for Leave to File Excess Pages and Motion for Leave of Court to File Additional Memorandum. After considering these motions, the court Recommends that the district court grant Defendant's Motion to Dismiss for the reasons discussed infra. Although the court reviewed Plaintiff's additional filings, the remaining motions

are deemed moot in light of the recommendation to grant Defendant's Motion to Dismiss.

Plaintiff, Gregory Moll, *pro se* on his own behalf, filed the current action bringing six claims against Bank of New York. Specifically Plaintiff alleges:

> (1) an initial land patent covering the property where plaintiff resided defeats any subsequent interests, (2) the Bank's assignor's loan of 'bank credit' rather than U.S. dollars was an ultra vires act, (3) failure to produce an original promissory note, (4) accounting fraud, (5) usury, and (6) 'illegal and immoral transactions' by the Bank in originating the mortgage lowan and in foreclosing on plaintiff's residence.

Mem. in Supp. p. iii; see also Am. Compl. p. 1-2, docket no. 2. Plaintiff has also made reference to provisions of the United States Constitution and several other federal statutes. Although Plaintiff seeks money damages, the essence of his complaint is to have his property returned to him.

### BACKGROUND

Plaintiff does not dispute Defendant's statement of facts as outlined in Defendant's memorandum in support of its Motion to Dismiss. See Mem. in Supp. p. iv-v; Opp. p. v-vi. Accordingly, the court sets forth the following relevant facts based on Defendant's statement of facts.

On approximately March 24, 1999, Plaintiff executed a deed

of trust in favor of the Bank's assignor, America's Wholesale Lender (AWL), as a security for a mortgage loan used to purchase some property. See Mem. in Supp. p. iv; Am. Compl. ¶¶ 51, 110. On approximately the same date, AWL assigned the Trust Deed to Defendant. See Am. Compl. ¶ 20. Plaintiff agreed to pay interest on the note secured by the Trust Deed at the rate of 7.75% per annum on $80,500.00. See id. ¶¶ 51, 117.

On approximately April 9, 2002, the Bank recorded a Notice of Default and Election to Sell against the property in the Salt Lake County Recorder's Office. See id. ¶ 21. A trustee's sale was held on March 4, 2003, at which time Defendant purchased the property. See id. ¶. 23.

On July 31, 2003, Defendant filed an unlawful detainer action in Third District Court, State of Utah, Case number 230106250, to evict and remove Plaintiff. See id. ¶ 17. Plaintiff filed several motions to dismiss and Defendant filed a motion for summary judgment in the State action. Eventually, the Third District Court found there was no material issue of fact and granted Defendant's motion for summary judgment on September 7, 2004. See id. ¶ 32. 49; Mem. in Supp. Ex. F. Defendant attached a copy of the Third District decision to its memorandum in support of the Motion to Dismiss. See Mem. in Supp. Ex. F. The state court ordered restitution and ordered Plaintiff to vacate and surrender the property to Defendant. See Mem. in

Supp. Ex. F. Plaintiff then filed his original complaint on September 15, 2004.

## DISCUSSION

In essence, this case involves a routine foreclosure with the all-too-routine denouement, a federal action filled with spurious arguments and meritless claims seeking to recast a state court decision. Of chief importance is the Rooker-Feldman doctrine. The court finds that under the Rooker-Feldman doctrine, the court lacks jurisdiction and therefore, Plaintiff's case should be dismissed. The Supreme Court has clearly stated that federal courts do not have authority to review, reverse or invalidate state court decisions. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal courts, other than the United States Supreme Court, are prohibited from reversing or modifying the judgment of a state court because to do so would be an exercise of appellate jurisdiction. See Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416. If there are constitutional questions during the course of a state case, a party should raise those issues in the appropriate state court, including bringing an appeal if appropriate, because state court's have a duty to decide such issues. See Rooker, 263 U.S. at 415. "Where a constitutional issue could have been reviewed

4

on direct appeal by the state appellate courts, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983." Anderson v. State of Colorado, 793 F.2d 262, 263 (10th Cir. 1986). A litigant who is unhappy with the proceedings in state court and the circumstances surrounding those proceedings, as Plaintiff appears to be in this case, cannot simply relitigate their case by filing in federal district court. See Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416.

In his opposition, Plaintiff argues there are two reasons why the Rooker-Feldman doctrine should not apply. First, the court in the state court litigation was acting in a ministerial and not a judicial capacity. See Opp. p. 1-2. Second, the state court did not have subject matter jurisdiction of one of the issues raised in the proceedings. The Court finds both arguments unpersuasive.

In support of his argument that the state court litigation was a ministerial rather than a judicial act, Plaintiff cites District of Columbia Court of Appeals v. Feldman et al., 460 U.S. 462 (1983). The Supreme Court's decision in Feldman is one of two cases that established the Rooker-Feldman doctrine. In Feldman, the Court determined whether proceedings before the District of Columbia Court of Appeals were ministerial, legislative, or administrative, versus judicial in nature. The

plaintiffs were denied a waiver of the District's bar rules which required bar applicants to graduate from an approved law school. The Supreme Court concluded that the proceedings were judicial in nature because the lower court "was called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist.'" Id. at 479 (quoting Prentis v. Atlantic Coast Line, 211 U.S. 210, 226 (1908) (alteration in original)).

In similar fashion, this court finds that the court in the state court litigation was "called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist." Id. The state court was asked to declare the rightful owner of the disputed property under current operating laws. Accordingly, the state court proceedings were judicial in nature. Therefore, the court rejects Plaintiffs first argument against applying the Rooker-Feldman doctrine to the instant case.

Next, Plaintiff alleges that the state court did not have subject matter jurisdiction to quiet title to the property. The court disagrees. Plaintiff's position is undermined by one of the very cases he relies on for support, Hughes v. Washington, 389 U.S. 290 (1967). In Hughes, Justice Stewart, who concurred in the Court's decision stated:

6

> Surely it must be conceded as a general proposition
> that the law of real property is, under our
> Constitution, left to the individual States to develop
> and administer. And surely Washington or any other
> State is free to make changes, either legislative or
> judicial, in its general rules of real property law,
> including the rules governing the property rights of
> riparian owners. Nor are riparian owners who derive
> their title from the United States somehow immune from
> the changing impact of these general state rules. Joy
> v. City of St. Louis, 201 U.S. 332, 342, 26 S.Ct. 478,
> 481, 50 L.Ed. 776. For if they were, then the property
> law of a State like Washington, carved entirely out of
> federal territory, would be forever frozen into the
> mold it occupied on the date of the State's admission
> to the Union. It follows that Mrs. Hughes cannot claim
> immunity from changes in the property law of Washington
> simply because her title derives from a federal grant.

Id. at 295; see also Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co., 429 U.S. 363, 378 (1977) ("Under our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States.").

Accordingly, the state court did have subject matter jurisdiction to quiet title to the property. Therefore, the court rejects Plaintiff's second argument against applying the Rooker-Feldman doctrine. The court also notes that for this same reason, Plaintiff's argument that the state court could not consider Plaintiff's claim of land patent also fails.

Plaintiff's complaint is replete with allegations that should be raised with the appropriate state appellate court on direct appeal. See Anderson, 793 F.2d at 263. Federal courts

7

are courts of limited jurisdiction and they possess only the power authorized by the Constitution and acts of Congress. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citations omitted). Plaintiff fails to meet his burden of establishing jurisdiction.

However plaintiff portrays his action, the *sine qua non* which remains is the fact that Plaintiff is simply trying to alter, change, amend or overrule a prior state court judgment. This is something that neither this court, nor any other Federal Court outside of the Supreme Court, may do. Accordingly, this court recommends that Defendant's Motion to Dismiss be GRANTED and the case DISMISSED.[1]

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to the Report and Recommendation within ten days after receiving it. Failure to object may constitute a waiver of objections upon subsequent

---

[1] The Court notes that it considered Plaintiffs remaining claims and arguments. After thorough consideration, the Court finds them to be without merit and unpersuasive. Plaintiff cannot simply relitigate matters that were either included in the state litigation or should have been raised in those proceedings. See Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416.

review.

DATED this __6__ day of July, 2005.

BY THE COURT:

_____
Brooke C. Wells
United States Magistrate Judge